IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOYCE RAE FENDALL WILKINSON, as Personal Representative and Administratrix of the ESTATE of PAUL THOMAS WILKINSON, II, | ) ) ) | Case No. C-1-01288 |
| | ) | |
| Plaintiffs, | ) ) | Judge Beckwith Magistrate Black |
| vs. | ) ) | |
| KATHRYN JEAN FAULEY, M.D.; MARY A. HANEBERG MERLING, M.D.; and CLINTON MEMORIAL HOSPITAL, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## FINAL PRETRIAL STATEMENT

This action came before the Court at a final Pretrial Conference held on October 18, 2004, at 9:00 a.m., pursuant to Rule 16, Federal Rules of Civil Procedure.

**I.    APPEARANCES:**

For Plaintiff: Mark B. Hutton, and Renee Infante

For Defendant Fauley: Maryellen C. Spirito and Gayle Arnold

For Defendant Merling: Brian D. Goldwasser

For Defendant Clinton Memorial Hospital: Dee Sheriff-MacDonald/Daniel J. Buckley

**II.    NATURE OF ACTION AND JURISDICTION:**

A.    This is an action for compensation of damages.  It is a survival and wrongful death action.

B.    The jurisdiction of the Court is invoked under Title 28, United States Code, Section 1332(a).

C.    The jurisdiction of the Court is not disputed.

**III.    TRIAL INFORMATION:**

    A.    The estimated length of trial is 15 days.

    B.    Trial to jury has been set for November 1, 2004, pursuant to the General Notice on Trial Assignment.

**IV.    AGREED STATEMENTS AND LISTS:**

    A.    <u>General Nature of the Claims of the Parties</u>

        1)    PLAINTIFF CLAIMS:

        Plaintiff asserts in Count 1 a right of recovery for defendants' negligence as follows:

        Plaintiff claims  Defendant  Fauley was negligent in the following ways:

        a)    failing to timely and appropriately monitor, manage, supervise, direct and treat Joyce Wilkinson's labor and delivery;

        b)    failing to adequately monitor the maternal contraction patterns, the fetal heart rate pattern,  and to initiate intrauterine resuscitative measures;

        c)    failing to expedite an emergency caesarean section in light of prolonged fetal bradycardia,

        d)    failing to summon appropriate personnel for a caesarian section and neonatal resuscitation; and

        e)    failing to adequately direct and supervise Clinton Memorial Hospital's personnel, who were, in part, her loaned servants, during Joyce Wilkinson' labor and Paul Thomas Wilkinson, II's delivery.

        Further, plaintiff asserts Dr. Fauley's negligence caused or  contributed to Paul Thomas Wilkinson, II's sustaining an intrapartum hypoxic ischemic injury to the brain resulting in static encephalopathy as manifested by spastic quadriparesis, mental retardation and epilepsy.   Further, Paul Thomas Wilkinson, II's cerebral palsy, severe retardation, non-ambulatory status; and his inability to feed himself were major contributors to his death.   Plaintiff, in Count 2 and 3, asserts the negligence of Defendant Fauley was a major contributor to Paul Thomas Wilkinson, II's  injuries and death and related damages.

Plaintiff claims  Defendant Merling  was negligent in the following ways:

a)     improperly monitoring  and treating the neonate in his asphyxiated state;

b)     failing to intubate the newborn in a timely and  prompt manner;

c)     failing to perform a cord blood gas analysis and evaluation in order to act on the same;

d)     negligently administering epinephrine by the intravenous route, rendering it ineffective;

e)     failing to expedite an emergent transfer for the asphyxiated neonate to a tertiary center;

f)     prematurely extubating the neonate; and

g)     failing to adequately direct and supervise Clinton Memorial Hospital's nursing personnel, who were, in part, her loaned servants, during Paul Thomas Wilkinson, II's  neonatal resuscitation and treatment.

Further, plaintiff asserts Dr. Merling's negligence caused or  contributed to Paul Thomas Wilkinson, II's sustaining an intrapartum hypoxic ischemic injury to the brain resulting in static encephalopathy as manifested by spastic quadriparesis, mental retardation and epilepsy. Further, Paul Thomas Wilkinson, II's  cerebral palsy, severe retardation, non-ambulatory status; and his inability to feed himself were major contributors to his death.   Plaintiff, in Count 2 and 3, asserts the negligence of Defendant Merling  was a major contributor to Paul Thomas Wilkinson, II's  injuries and death and related damages.

Plaintiff claims  Defendant Clinton Memorial Hospital  was negligent in the following ways:

Defendant Clinton Memorial had  in its employ, or subject to its control, direction, and supervision physicians, including Defendants Fauley and Merling,  nurses, respiratory therapists, laboratory and other hospital personnel over which it exercised control, supervision and direction with

- 3 -

the right to employ, discharge and/or supervise and direct. The negligence of said employees and/or agents is likewise the negligence of defendant Clinton Memorial.

Plaintiffs assert Clinton Memorial Hospital and its employees was negligent in the following ways:

a)    The nursing staff at Clinton Memorial hospital deviated from the applicable standard of care in:

b)    failing to maintain a technically adequate tracing of the fetal heart rate;

c)    failing to accurately interpret the tracing;

d)    failing to adequately monitor the condition of the fetus;

e)    failing  to respond to a nonreassuring fetal heart rate pattern;

f)    failing to monitor the maternal contraction pattern;

g)    failing to promptly apprize Dr. Fauley of the initial deceleration;

h)    failing to notify the physician of the fetal distress;

i)    failing to go up the chain of command to intervene on behalf of the compromised fetus;

j)    failing to provide intrauterine resuscitative measures, and

k)    failing to timely prepare for a cesarean section.

Further, Clinton Memorial Hospital was negligent in:

a)    failing  to adequately train personnel in neonatal resuscitation;

b)    failing to have proper functioning hospital equipment; and

c)     recruiting Defendant Fauley, a non-board certified obstetrician, guaranteeing her an annual salary; operating The Prenatal Center which in turn determined the call schedule for obstetricians; providing equipment, instruments and personnel to Defendant Fauley; and otherwise endorsing her as its agent.

Further, plaintiff asserts Clinton Memorial Hospital's negligence caused or contributed to Paul Thomas Wilkinson, II's sustaining an intrapartum hypoxic ischemic injury to the brain resulting in static encephalopathy as manifested by spastic quadriparesis, mental retardation and epilepsy. Further, Paul Thomas Wilkinson, II's cerebral palsy, severe retardation, non-ambulatory status; and his inability to feed himself were major contributors to his death. Plaintiff, in Counts 2 and 3, asserts the negligence of Defendant Clinton Memorial Hospital was a major contributor to Paul Thomas Wilkinson, II's injuries and death and related damages.

2)    DEFENDANT FAULEY'S CLAIMS:

Defendant, Kathryn J. Fauley, M.D., denies any and all claims of liability as asserted in Counts 1, 2 and 3 of Plaintiff's Amended Complaint for the following reasons:

1    Dr. Fauley appropriately monitored, managed and supervised the care of Plaintiff, Joyce Wilkinson, in labor and delivery;

2    Dr. Fauley appropriately evaluated the condition of Plaintiff, Joyce Wilkinson, properly recognized fetal heart rate patterns and took appropriate actions in response thereto;

3    Dr. Fauley appropriately placed a fetal scalp electrode and continued to evaluate the condition of Plaintiff, Joyce Wilkinson, and monitor the fetal heart rate monitor patterns;

4    In an appropriate and timely manner, Dr. Fauley took Plaintiff, Joyce Wilkinson, to the operating room for an emergency C-section to deliver Plaintiff's decedent, Paul

Wilkinson, with appropriate personnel present and available for such a emergency;

5    Dr. Fauley denies that the agents and employees of Clinton Memorial Hospital were her "loaned servants" during her care of Plaintiff, Joyce Wilkinson, and delivery of Plaintiff's decedent, Paul Wilkinson;

6    Dr. Fauley denies any negligent conduct on her part which is alleged to have caused injury to and the death of Plaintiff's decedent, Paul Wilkinson;

7    The neurological outcome to Plaintiff's decedent, Paul Wilkinson, was an unforeseeable, unpredictable and unpreventable occurrence;

8    Maternal smoking during pregnancy was a direct and proximate result of a small placenta likely resulting in inadequate oxygen delivery during pregnancy.

9    To the extent that Paul Wilkinson's treatment has been paid for by medicaid, Plaintiff is not the real party in interest pursuant to HCFA guidelines.

3)    **DEFENDANT MERLING'S CLAIMS:**

Defendant denies liability for the following reasons:

a)    Dr. Merling timely and appropriately monitored and tested Paul Wilkinson in his neonatal state.

b)    Dr. Merling timely and appropriately intubated Paul Wilkinson.

c)    Dr. Merling appropriately performed a cord blood gas analysis.

d)    Dr. Merling appropriately administered epinephrine.

e)    Dr. Merling arranged for appropriate transfer.

f)    Dr. Merling appropriately extubated Paul Wilkinson.

- 6 -

g)      The staff of Clinton Memorial Hospital were not loaned servants of Dr. Merling.

h)      Paul Wilkinson's injuries were caused prior to a point in time when Dr. Merling cared for Paul Wilkinson.

Defendant affirmative defenses states:

a)      Paul Wilkinson's injuries were caused by circumstances or persons over which Dr. Merling had no control.

b)      Joyce Wilkinson was negligent in smoking throughout her pregnancy which resulted in harm to Paul Wilkinson.

c)      To the extent that Paul Wilkinson's treatment has been paid for by medicaid, Plaintiff is not the real party in interest pursuant to HCFA guidelines.

4)      DEFENDANT CLINTON MEMORIAL HOSPITAL'S CLAIMS:

Defendant, Clinton Memorial Hospital, denies all liability and claims that it's employees were not negligent for the following reasons:

a)      The nursing staff at Clinton Memorial Hospital met the standard of care in all respects including the following:

b)      The nursing staff maintained a technically adequate tracing of the fetal heart rate;

c)      The nursing staff accurately interpreted the tracing;

d)      The nursing staff adequately monitored the condition of the fetus;

e)      The nursing staff responded appropriately and in a timely fashion to all non-reassuring fetal heart patterns;

f)      The nursing staff monitored the maternal contraction pattern appropriately;

g)      The nursing staff promptly apprised Dr. Fauley of the initial deceleration after taking appropriate nursing interventions;

h)    The nursing staff notified the physician of the baby's fetal heart patterns appropriately;

i)    The standard of care did not require that the nursing staff go up any purported "chain of command" to intervene on behalf of the fetus;

j)    The nursing staff appropriately and timely provided intrauterine resuscitative measures;

k)    The nursing staff appropriately and timely prepared for caesarean section resulting in a 22 minute time frame between decision and incision which is well within the standard of care of 30 minutes;

l)    Clinton Memorial Hospital adequately trained its personal in neonatal resuscitation;

m)    Clinton Memorial Hospital provided Plaintiff with properly functioning hospital equipment at all times;

n)    Clinton Memorial Hospital properly recruited Dr. Fauley, a properly trained obstetrician, and properly provided appropriate equipment, instruments and personnel to her, and deny agency therefore;

o)    Paul Wilkinson's injuries were caused prior to admission to Clinton Memorial Hospital resulting in a terminal bradycardia which was responded to in appropriate fashion by all Defendants;

p)    Defendant, Clinton Memorial Hospital, asserts further that nothing that Clinton Memorial Hospital, its employees or agents did or did not do caused or contributed to Paul Thomas Wilkinson, II's injuries or death; and

q)    Clinton Memorial Hospital asserts that the actions of all parties, including Dr. Fauley and Dr. Merling, were well within the standard of care and did not cause any of Paul Wilkinson's injuries or death.

r)    Defendant, Clinton Memorial Hospital's affirmative defenses include:

- 8 -

1)      Paul Wilkinson's injuries were caused by the contributory negligence of the Plaintiff.

2)      Plaintiff's injuries were caused by other independent, unforeseeable, intervening and superceding causes for which this answering Defendant is not liable.

3)      Plaintiff has failed to name necessary and/or indispensable parties necessary for just adjudication pursuant to F.R.C.P. §19, namely Medicaid.

B.      <u>Uncontroverted Facts</u>

The following facts are established by admissions in the pleadings or by stipulations of counsel:

1)      Joyce Ray Fendall Wilkinson presented to defendant Clinton Memorial Hospital on August 20, 1994, at approximately 10:20 a.m., for the purpose of delivering her unborn child, Paul Thomas Wilkinson, II.

2)      Defendant Fauley presented to Defendant Clinton Memorial Hospital at 11:40 a.m. on August 20, 1994, to evaluate plaintiff Joyce Rae Fendall Wilkinson.

3)      An emergency cesarean section was ordered by defendant Fauley at 3:02 p.m. on August 20, 1994.

4)      On August 20, 1994, at 3:28 p.m., Paul Thomas Wilkinson, II, was born.

5)      At birth, Paul Thomas Wilkinson, II had no heart tones, no respiratory effort and no muscle tone. His APGAR scores were recorded at 0, 3, 10 at 1, 5 and 10 minutes. The one-minute APGAR score was 0. The five-minute APGAR score was 3, and the ten-minute APGAR score was 4.

6)      Defendant pediatrician Merling provided neonatal care at 3:40 p.m. on August 20, 1994. Paul Thomas Wilkinson, II, was intubated by defendant Merling.

7)      At 3:48 p.m. on August 20, 1994, Paul Thomas Wilkinson, II, remained limp with minimal response to pain.

8)    At 3:53 p.m. on August 20, 1994, Paul Thomas Wilkinson, II, was transferred to defendant Clinton Memorial Hospital's nursery.

9)    At 4:30 p.m. on August 20, 1994, Paul Thomas Wilkinson, II, was extubated.

10)   At 4:45 p.m. on August 20, 1994, Paul Thomas Wilkinson, II, was transferred to Dayton Children's Hospital in Dayton, Ohio.

11)   On January 4, 2004, Paul Thomas Wilkinson, II, died.

12)   JOYCE RAE FENDALL WILKINSON is the  Personal Representative and Administratrix of the ESTATE of PAUL THOMAS WILKINSON, II.

13)   A physician-patient relationship existed between Joyce and Paul Thomas Wilkinson, II and Defendant Fauley;

14)   A physician-patient relationship existed between  Paul Thomas Wilkinson, II and Defendant Merling;

15)   A hospital-patient relationship existed between Joyce and Paul Thomas Wilkinson, II and Defendant Clinton Memorial Hospital.

16)   The parties enter into the following stipulations:

17)   All medical records and bills, with collateral source material redacted, shall be admissible without necessity of calling witnesses to lay foundation testimony, subject  to all other objections.

18)   Witnesses and exhibits listed by one party may be utilized by any other party to this litigation.

19)   Copies and portions of medical literature and medical treatises may be utilized at trial instead of the originals if the copies are identified as to title, author, pages, publication date and copyright date.

20)   Documents produced by defendant Clinton Memorial Hospital  during discovery may be used instead of originals of such documents.  All other objections to the admissibility and/or relevancy of such documents are reserved for trial.

21) Photographs and video tapes which have been previously exchanged prior to trial and/or by agreement of the parties may be offered into evidence without further foundation from records custodians as to their authenticity and genuineness; however, objections as to relevancy and other objections are reserved for trial.

22) Legible copies of original documents may be substituted for the original documents, provided that they are not highlighted and are complete.

23) Overlays, slide reproductions, and other forms of enlargements or enhancements that do not distort listed exhibits are permitted without further foundation, provided that the original or original copy of the exhibit is also produced for comparison, if requested.

Dr. Fauley's corrections to Plaintiff's list of "uncontroverted facts"

As to 3)    In the record, an emergency cesarean section was ordered by defendant Fauley at either 15:02 or 15:05.

As to 4)    In the record, incision for C-section occurred at 15:24 and delivery of Paul Thomas Wilkinson, II occurred at 15:28.

As to 6)    Defendant pediatrician Merling provided neonatal care at 15:28 on August 20, 1994. Paul Thomas Wilkinson, II was intubated by defendant Merling at 15:40.

As to 10)   Between 18:00 and 18:15 on August 20, 1994, Paul Thomas Wilkinson, II was transferred to Dayton Children's Hospital in Dayton, Ohio.

## DEFENDANT, CLINTON MEMORIAL HOSPITAL'S ADDITIONAL UNCONTROVERTED FACTS:

1) Plaintiff, Joyce Rae Fendall Wilkinson, smoked cigarettes throughout her pregnancy with Paul Thomas Wilkinson, II.

2) Plaintiff was placed on an electronic fetal monitor soon after admission at 10:20AM.

3) At 1400 a deceleration of the fetal heart rate was noted to 65-70 beats per minute, for which the patient was repositioned by the nurses and oxygen was administered.

- 11 -

4)    The nursing staff notified Dr. Fauley of the baby's fetal heart tracing at 1410.

5)    At 1412 a similar deceleration occurred after which the nursing staff again repositioned the mother.

6)    Dr. Fauley responded to labor & delivery and evaluated Plaintiff at 1422.

7)    At approximately 1450 the baseline began declining and transcended into bradycardia of 90 beats per minute.

8)    The patient was placed in knee chest position thereafter.

9)    At 1502 Dr. Fauley ordered an emergency caesarean section.

10)    At 1524 the incision was made.

11)    Cord blood gases reflected a pH of 7.228, $CO_2$ of 56.5, $PO_2$ of 44.1, $HCO_3$ of 22.7, base excess of -6.6.

12)    After transfer to Children's Medical Center in Dayton, Ohio, increased tone and lip smacking activity was noted immediately upon arrival.  The chest x-ray showed increased infiltrates or markings.

13)    Laboratory studies at Children's Medical Center revealed that Paul Wilkinson had a hemoglobin of 21.2, and a nucleated red blood cell count of 16.  On the evening of admission Paul's electrolytes revealed a sodium of 130 and potassium of 3.5.

14)    Paul's BUN and creatinine peaked on August 21, and declined thereafter.

15)    Examination at Children's Medical Center revealed that Paul had a congenitally small chin, or micrognathia.

16)    A cerebral ultrasound performed on 08/22/94 reflected an abnormal diffuse cerebral echoic pattern consistent with cerebral edema.

17)    A CT of the head performed on 09/29/94 reflected global atrophy, poor gray/white matter differentiation diffusely and thalamic and basal ganglia calcifications.

- 12 -

18)     Clinton Memorial Hospital agrees to enter into all stipulations listed by Plaintiff with the exception of redaction of collateral source material from all medical records and bills.  Otherwise said medical records and bills shall be admissible without necessity of calling witnesses to lay foundation testimony, subject to all other objections.

ADDITIONAL FACTS PROPOUNDED BY DEFENDANT, CLINTON MEMORIAL HOSPITAL WHICH MAY OR MAY NOT BE CONTROVERTED BY PLAINTIFF:

1)      Over the two hours subsequent to placement of the electronic monitor at 10:20, the fetal heart rate tracing remained reassuring with a normal baseline and excellent long term variability.

2)      Nursing interventions taken by the nurses subsequent to an isolated deceleration at 1400 was appropriate and resulted in a prompt return to normal baseline with excellent long term variability.

3)      Repositioning after a similar deceleration at 1412 resulted in prompt resumption of a normal baseline of 150 beats per minute.

4)      Upon Dr. Fauley's examination at 1422 her exam was associated with a brief deceleration to 90 beats per minute, but there was excellent recovery following the exam to a normal baseline of 140 to 150 beats per minute. Long term variability remained good and no further decelerations were noted.

5)      The baseline declined between 1450 and 1455 which transcended into a bradycardia of 90 beats per minute.  This was timely recognized by the nursing staff who placed the patient in the knee chest position with an immediate return to 155 beats per minute.

6)      Preparations for the emergency c-section were rapid on the part of the nursing staff and the hospital, as well as Dr. Fauley, resulting in a 22 minute time frame between decision and incision.

7)      The cord pH was entirely within normal limits, therefore excluding significant intrapartum asphyxia.

8)      Resuscitation was somewhat restricted by excretions in the infant's airway.

- 13 -

9)   Blood gases performed at 4:30PM showed only a fairly mild acidosis at 7.177, and by 1720 the pH was 7.291.

10)  Paul's lip smacking activity, which was noted immediately upon arrival at Children's Medical Center in Dayton, Ohio was suggestive of seizure like activity.

11)  Blood gases on admission to Children's Medical Center were normal with a pH of 7.42.

12)  Paul's hemoglobin upon admission reflected hemoconcentration.  When coupled with a nucleated red blood cell count of 16, this indicates some element of chronic hypoxemia.

13)  Electrolytes on the evening of admission revealed subacute inappropriate antidiuretic hormone activity (SIADH).  SIADH does not normally develop until the second or third day of life.

14)  Both the early onset and the protracted course of SIADH reflects a chronic rather than acute process.

15)  The early peaking of the BUN and creatinine on August 21, is consistent with an insult confined to the intrapartum period alone.

16)  The premature onset of lip smacking would indicate seizure like activity which in turn reflects a more prolonged and earlier hypoxic/ischemic event.

17)  The excellent fetal heart rate variability on the monitor prior to 1500, the normal cord gas and base excess and response to resuscitative efforts all indicate that it is highly unlikely that Paul could have sustained such severe neurologic injury from a brief period of terminal bradycardia.

C.   <u>Issues of Fact and Law</u>

1)   Contested Issues of Fact: The contested issues of fact remaining for decision are:

     a)   Whether Defendant Fauley was negligent and proximately caused the injuries complained of;

- 14 -

b)    Whether Defendant Merling was negligent and proximately caused the injuries complained of;

c)    Whether Defendant Clinton Memorial Hospital was negligent and proximately caused the injuries complained of;

d)    Whether Defendant Fauley was an ostensible or direct agent of Clinton Memorial Hospital;

e)    Whether Clinton Memorial Hospital's nursing personnel were the loaned servants of Defendant Fauley at anytime during their care and treatment of Joyce and Paul Thomas Wilkinson, II;

f)    Whether Clinton Memorial Hospital's nursing personnel were the loaned servants of Defendant Merling at anytime during their care and treatment of Paul Thomas Wilkinson, II; and

g)    The nature and extent of plaintiff's damages.

Defendant, Fauley:

a)    Whether the negligence of Plaintiff, Joyce Wilkinson, contributed as a direct and proximate cause to the injury and death of Plaintiff's decedent, Paul Wilkinson.

2)    Contested Issues of Law: There are no special issues of law reserved other than those implicit in the foregoing issues of fact.

If the parties are unable to agree on what the contested issues of fact or law are, their respective contentions as to what the issues are shall be set forth separately and clearly labeled.

**DEFENDANT, CLINTON MEMORIAL HOSPITAL'S CONTESTED ISSUES OF FACT:**

1)    In addition to the controverted facts listed above by Clinton Memorial Hospital, this Defendant states that contested issues of fact remaining for decision include:

a) Whether Defendant, Dr. Fauley was negligent and proximately caused the injuries complained of;

b) Whether Defendant, Dr. Merling was negligent and proximately caused the injuries complained of;

c) Whether Defendant, Clinton Memorial Hospital was negligent and proximately caused the injuries complained of;

d) Whether Dr. Fauley was an independent contractor;

e) Whether Dr. Merling was an independent contractor;

f) Whether Paul Wilkinson's injuries and death were caused by conditions and events outside the control of Clinton Memorial Hospital or any other defendant.

g) Whether the negligence of Plaintiff, Joyce Wilkinson, contributed as a direct and proximate cause to the injury and death of Plaintiff's decedent, Paul Wilkinson.

2) Contested issues of Law:

a) Clinton Memorial Hospital agrees that there are no special issues of law reserved other than those implicit in the foregoing issues of fact relative to a medical malpractice claim at this time.

D.    <u>Witnesses</u>

1) Plaintiff will call:

a) Patrick D. Barnes, 65 Pearce Mitchell Place, Stanford, CA, expert pediatric neuroradiologist, will testify that Paul Thomas Wilkinson, II's brain imaging studies are most consistent with a profound, or combined profound plus partial prolonged, hypoxic-ischemic brain injury, evolving from the birth period.

b) Deborah Burroughs, R.N.C., 3496 Fox Trial, Fayetteville, Arkansas, expert nurse, will testify that the nursing staff at Clinton Memorial hospital deviated from the applicable standard of care if failing to maintain a technically

adequate tracing of the fetal heart rate; failing to accurately interpret the tracing; failing to promptly apprize Dr. Fauley of the initial deceleration; failing to go up the chain of command; failing to timely prepare for a cesarean section; and failing to comply with reasonable resuscitative measures.

c)   Michael S. Cardwell, M.D., 3335 Meijer Drive, Toledo, OH, expert obstetrician, maternal-fetal medicine physician, will testify that Dr. Fauley and the nursing staff deviated from the standard of care in not expediting an emergency caesarean section in light of prolonged fetal bradycardia, which negligence resulted in the baby sustaining perinatal asphyxia.

d)   Denise Davis, R.N., 407 Mayfair Drive, Wilmington, Ohio, employee of defendant Clinton Memorial Hospital.

e)   Larry D. Eggert, M.D., 1979 Shoshone, Ogden, UT, expert neonatologist, will testify that Dr. Merling and the nursing staff/personnel at Clinton Memorial Hospital, improperly monitored and treated the neonate for his asphyxiated state, and prematurely extubated him, which contributed to his global injuries.

f)   Defendant Kathryn Jean Fauley, M.D. will testify consistent with her deposition.

g)   Raelene Fendall, Paul's grandmother and Joyce Wilkinson's mother, Newberg, Oregon, who will testify about Paul's disabilities and extraordinary needs, his death, and commensurate losses;

h)   Lon Fendall, Paul's grandfather and Joyce Wilkinson's father, Newberg, Oregon, will testify about Paul's disabilities and extraordinary needs, his death, and commensurate losses.

i)   Judith Henson, R.N., 126 Sycamore Street, Leesburg, Ohio, employee of defendant Clinton Memorial Hospital, will testify consistent with her deposition.

- 17 -

j)  Linda Holt, M.D., expert obstetrician, 6410 Old Orchard Rd., Skokie, Ill., will testify that the nursing staff failed to adequately monitor the condition of the fetus; failed to respond to nonreassuring fetal heart rate; failing to notify the physician of the fetal distress; and failed to respond to signs of significant deterioration of the fetal status; that Dr. Fauley failed to initiate and proceed with cesarian section when the fetus had evolving compromise; and failed to summon appropriate personnel for a caesarian section and neonatal resuscitation.    Further, Clinton Hospital was negligent in failing to train personnel in neonatal resuscitation.

k)  Laura Johnson, R.N., 11235 Sinking Spring Road, Hillsboro, Ohio, former employee of defendant Clinton Memorial Hospital, will testify consistent with her deposition.

l)  Susan Jordan, R.N., 329 N. High Street, Hillsboro, Ohio, employee hospital, will testify consistent with her deposition.

m)  Defendant Mary A. Haneberg Merling, M.D., will testify consistent with her deposition.

n)  Dr. Raymond Redline, Institute of Pathology, 2085 Adelbert Road, Room 203, Cleveland, Ohio  44016, an expert placental pathologist, will testify the placenta shows no evidence of significant chronic, subacute or recent lesions.   The findings of the placenta would not be expected to contribute to Paul Thomas Wilkinson, II' neurologic impairments in any direct way.

o)  Ann Ropp, R.N., 1203 West 66th Terrace, Kansas City, MO., expert nurse, will testify the nurses failed to adequately monitor the labor progress, the fetal heart rate, and the maternal contraction status; failed to timely notify the physician when the fetal heart rate was nonreassuring; failed to provide intrauterine resuscitative measures; and failed to expedite the cesarean section.

p)  James R. Schimschock, M.D., treating neurologist, Portland, Oregon; will testify by deposition that Paul interacted with the environment and Paul's history and physical findings were consistent with an etiology of perinatal asphyxia. (by deposition).

q)  Jerome F. Sherman, Ph.D., expert witness, 9947 Essex, Omaha, Nebraska, will testify about economic and non-economic loss

r)  O. Carter Snead, III, M.D., expert pediatric neurologist, will testify to a reasonable degree of medical certainty that Paul had static encephalopathy as manifested by spastic quadriparesis, mental retardation and epilepsy, secondary to an intrapartum hypoxic ischemic injury to the brain; and that his cerebral palsy, severe retardation, non-ambulatory status; and his inability to feed himself; were major contributors to his death. Dr. Snead will also testify that his projected life expectancy was 40 additional years, but that he unfortunately succumbed earlier to his disabilities;

s)  Sharon Wells, R.N., 861 Lytle Road, Lynchburg, Ohio, former employee of defendant Clinton Memorial Hospital, will testify consistent with her deposition.

t)  Plaintiff Joyce Rae Fendall Wilkinson will testify about the facts surrounding her labor and delivery of Paul Thomas Wilkinson, II and his extraordinary needs and profound disabilities, culminating in his death and her and Paul's sibling's losses;

Plaintiff may call:

a)  Kaitlyn Wilkinson, Newberg, Oregon, Paul's 14 year old sister, will testify about Paul's disabilities and extraordinary needs, his death, and commensurate losses.

b)  Vicki Farris, R.N., The Children's Medical Center, Dayton, Ohio may testify about her evaluation and care of Paul Thomas Wilkinson, II during transfer from Clinton Memorial Hospital to Dayton on 08/20/94.

c)    Jeffrey Loughhead, M.D., The Children's Medical Center, Dayton, Ohio may testify about his evaluation and care of Paul Thomas Wilkinson, II at the time of transfer from Clinton Memorial Hospital.

d)    Foundation witnesses.

e)    Paul Thomas Wilkinson, II's health care providers;

2)    Defendant Fauley will call the following witnesses:

a)    Plaintiffs and all Plaintiffs' lay and expert witnesses on cross-examination.

b)    Co-Defendants and all Co-Defendants' lay and expert witnesses on cross-examination.

c)    Kathryn J. Fauley, M.D., as lay and expert witness

d)    M. Susan Schilling, M.D., 4 Copley Street, Brookline, MA, OB/GYN and maternal fetal medicine expert, will testify that Dr. Fauley met accepted standards of care in her treatment of Plaintiffs, Joyce Wilkinson and Paul Thomas Wilkinson, and that she did not cause injury to Plaintiffs.

d)    Elias G. Chalhub, M.D., 100 Hospital Memorial Drive, Suite 2A, Mobile, AL, pediatric neurology expert, will testify that Dr. Fauley did not cause injury to Plaintiff's decedent.

e)    Mark B. Landon, M.D., Department of Obstetrics and Gynecology, OSU College of Medicine, Fifth Floor, Means Hall, 1657 Upham Drive, Columbus, OH, OB/GYN and maternal fetal medicine expert, will testify that Dr. Fauley met accepted standard of care in her treatment of Plaintiffs, Joyce Wilkinson and Paul Wilkinson, and that she did not cause injury to Plaintiffs.

f)    James Greenberg, M.D., Division of Pulmonary Biology, Room 4042, Children's Hospital Research Foundation, Children's Hospital Medical Center, 3333 Burnet Avenue, Cincinnati, OH, expert neonatologist, will testify that Dr. Fauley did not cause injury to the Plaintiffs.

g)      Stephen A. Straubing, M.D., 7870 Ivygate Lane, Cincinnati, OH, OB/GYN expert who will testify that Dr. Fauley met accepted standards of care in her treatment of Plaintiffs, Joyce Wilkinson and Paul Thomas Wilkinson, and Dr. Fauley did not cause injury to the Plaintiffs.

h)      David Strauss, Ph.D., Life Expectancy Project, 1439 17th Avenue, San Francisco, CA, statistician/life expectancy expert, will testify concerning the life expectancy of Plaintiff, Paul Thomas Wilkinson.

i)      Dorene Ann Spak, M.Ed., CRC, LPC, 2296 Cross Creek Trail, Cuyahoga Falls, OH, expert life care planner, will testify concerning her opinions about an appropriate life care plan for Paul Thomas Wilkinson.

j)      Gary P. Brewer, 3999 Alward Road, Pataskala, OH, annuity expert.

3)   Defendant Merling will or may call:

a)      Mary Ann Merling, M.D. and will testify as to the care and treatment provided to Paul Wilkinson and further that she met the standard of care of a competent pediatrician.

b)      David Neal Franz, M.D.  3333 Burnet Avenue, Cincinnati, OH and will testify that Dr. Merling met the standard of care and that Paul Wilkinson's injuries were sustained prior to delivery.

c)      Ward Rice, M.D., 3333 Burnet Avenue, Cincinnati, OH and will testify that Paul Wilkinson's injuries were sustained prior to delivery due, in part, to an extremely small placenta, possibly secondary to maternal smoking.

d)      Mark Scher, M.D., 11108 Euclid Avenue, Cleveland, OH  and will testify that the injuries to Paul Wilkinson occurred from an asphyxial insult within the peripartum period and that the treatment after Paul Wilkinson's birth did not cause or contribute to any further harm.

e)      Defendant reserves the right to call any or all of the experts identified by the other Defendants.

f)    Defendant reserves the right to call any or all of the Defendants.

g)    Defendant reserves the right to call as if upon cross-examination, Plaintiff and all fact and expert witnesses identified by Plaintiff.

4)    Defendant, Clinton Memorial Hospital will or may call:

a)    Harlan R. Giles, M.D., MUOTTAS, 21 Little Sewickley Creek Road, Sewickly, PA 15143-8340. Dr. Giles is a board certified obstetrician/gynecologist and maternal fetal specialist. It is anticipated that he will testify that it is highly unlikely that Paul Wilkinson could have sustained severe neurologic injury from the brief period of terminal bradycardia involved and that the nursing staff at Clinton Memorial Hospital met the standard of care in all respects in performing a through initial assessment, maintaining monitoring surveillance, responding to isolated decelerations by repositioning the patient, administering oxygen and giving a bolus of IV fluids. Further, it is anticipated that he will testify that when Dr. Fauley called a c-section that the surgery was initiated well within the thirty minute time frame from decision to incision. Finally, it is anticipated that he will testify that Paul Wilkinson's devastating neurologic outcome could not have been predicted or prevented.

b)    Donna Adelsperger, R.N., R.N.C., M.Ed. 11480 Olde Gate Drive, Apt. E, Cincinnati, OH 45246. Ms. Adelsperger is an expert nurse who has written and taught the standards of care applicable to nurses in labor & delivery, and in particular with respect to interpretation and management of fetal heart rate tracings for over thirty years. It anticipated that she will testify that the nursing staff met the standard of care of reasonably prudent nurses under the same or similar circumstances in all respects; that the nurses maintained technically adequate tracings of the fetal heart, that they properly interpreted the tracings, that nursing interventions were timely and appropriate, that notification to the physician was timely, that prompt notification of the supervisor regarding an impending emergency caesarean section was performed and that prompt gathering of personnel needed to do the surgery was performed; and that Paul Wilkinson's resuscitation was managed

- 22 -

in a timely and appropriate manner by all personnel, and within the standard of care.

c)    Stephen Renas, Ph.D., 2706 Cedarbrook Way, Beavercreek, OH 45431.  Dr. Renas is a Ph.D. economist who will testify regarding economic and noneconomic loss purportedly sustained by Plaintiff.

d)    Kathryn Jean Fauley, M.D., 630 W. Main Street, Suite 300, Wilmington, OH 45177.  Dr. Fauley is an obstetrician/gynecologist defendant herein who it is anticipated will testify, consistent with deposition testimony, that she met the standard of care in all respects and that nothing she did or did not do proximately caused Paul Wilkinson, II's injuries or death.

e)    Mary Ann Haneberg Merling, M.D., 1184 W. Locust Street, Wilmington, OH 45177.  It is anticipated that Dr. Merling will testify, consistent with her deposition testimony, that she met the standard of care in all respects as it relates to her neonatal resuscitation of Paul Wilkinson, II, and that nothing she did or did not do proximately caused his injuries or death.

f)    Laura Johnson, R.N., 3146 Harriet Road, Hillsboro, OH 45133.  Ms. Johnson is a labor & delivery nurse who took care of Joyce Fendall Wilkinson throughout the course of her labor & delivery of Paul Wilkinson, II.  She is expected to testify, consistent with her deposition testimony, that her care and treatment of Joyce Fendall Wilkinson and her infant, Paul Wilkinson, II, met the standard of care in all respects and that nothing she did or did not do proximately caused this Plaintiff's injuries or death.

g)    Susan Jordan, R.N., 329 North High Street, Hillsboro, OH 45133.  Ms. Jordan will testify to her involvement in the care and treatment of Joyce Fendall Wilkinson and Paul Wilkinson, II on the day of his delivery consistent with her deposition testimony.

h)    Denise Davis, R.N., 407 Mayfair Drive, Wilmington, OH.  Ms. Davis was a member of the operating room team.  It is anticipated that she will testify, consistent with her deposition testimony, as to the times that she was called, the time that she arrived, and to the fact that she arrived after the baby had already been delivered.

i)      Lisa Williams, R.N. It is anticipated that Ms. Williams will testify, consistent with her deposition testimony as to her personal knowledge and limited role in the care and treatment of Joyce Fendall Wilkinson and Paul Wilkinson, II.

j)      Judy Burton, R.N.  Ms. Burton was a member of the operating room team and is expected to testify to her personal knowledge of the facts surrounding the care and treatment of Joyce Fendall Wilkinson and Paul Wilkinson, II.

k)      David Neal Franz, M.D., 3333 Burnet Avenue, Cincinnati, OH.  It is anticipated that Dr. Franz will testify that Dr. Merling met the standard of care and that Paul Wilkinson's injuries were sustained prior to delivery.

l)      Ward Rice, M.D., 3333 Burnet Avenue, Cincinnati, OH.  It is anticipated that Dr. Rice will testify that Paul Wilkinson's injuries were sustained prior to delivery due, in part, to an extremely small placenta, possibly secondary to maternal smoking.

m)      Mark Scher, M.D., 11108 Euclid Avenue, Cleveland, OH.  It is anticipated that Dr. Scher will testify that the injuries to Paul Wilkinson occurred from an asphyxial insult within the peripartum period and that the treatment after Paul Wilkinson's birth did not cause or contribute to any further harm.

n)      Mark B. Landon, M.D.  It is anticipated that Dr. Landon will testify that Dr. Fauley met the standard of care and that the infant's hypoxic injury did not result from anything Dr. Fauley did or did not do.

o)      Susan Schilling, M.D.  Dr. Schilling is an obstetrician/gynecologist.  It is anticipated that she will testify that the care given by Dr. Fauley was well within the accepted obstetrical standards of care.

p)      James Greenburg, M.D.  3333 Burnet Avenue, Cincinnati, OH. Dr. Greenburg is a neonatologist.  It is anticipated that he will testify that this infant experienced chronic placental insufficiency rather than an acute asphyxic event, and that chronic placental insufficiency is the most likely explanation for this infant's ongoing neurologic and associated medical problems.

- 24 -

q)    Elias G. Chalhub, M.D., 100 Hospital Memorial Drive, Suite 2A, Mobile, AL, pediatric neurology expert, will testify that Dr. Fauley did not cause injury to Plaintiff's decedent.

r)    Glenna Parsley.  Ms. Parsley was director of medical records at Clinton Memorial Hospital at the time in question.  It is anticipated that she will testify as to the maintenance of the medical records and fetal monitor strips at issue in this case.

s)    Defendant reserves the right to call any or all of the experts identified by the other defendants.

t)    Defendant reserves the right to call any or all of the defendants.

u)    Defendant reserves the right to call as if on cross examination, Plaintiff, and all fact and expert witnesses identified by Plaintiff.

5)    The parties reserve the right to call rebuttal witnesses whose testimony could not reasonably be anticipated without prior notice to opposing counsel.

E.    <u>Expert Witnesses</u>

The parties are limited to the following number of expert witnesses, including treating physicians, whose names have been disclosed and reports furnished to opposing counsel:

Plaintiff:              Eight experts.

Defendant Fauley:     Nine experts

Defendant Merling:    Three experts.  Defendant reserves the right to call those experts identified by other Defendants regardless of whether or not those parties remain at the time of trial.

Defendant Clinton Memorial Hospital:  Defendant, Clinton Memorial Hospital, is limited to three retained experts in addition to Dr. Fauley, Dr. Merling, Laura Johnson, and treating physicians and treating nurses whose names whose names have been disclosed.  Reports have been furnished to opposing counsel from the three retained experts, Dr. Giles, Ms. Adelsperger and Dr. Renas. Depositions of the treating physicians

- 25 -

including Dr. Fauley and Dr. Merling, have been provided.  Depositions of all Clinton Memorial Hospital nurses have also been provided.

Clinton Memorial Hospital reserves the right to call all experts identified by Dr. Fauley and Dr. Merling, regardless of whether or not those parties remain at the time of trial.  They have been identified above and their reports were provided to opposing counsel by co-defense counsel.

Counsel have attached a resume of each expert's qualifications as a part of Appendix A, herein.

F.    Exhibits

See attached Appendices of Plaintiff and each Defendants' exhibit list.


G.    Depositions

Testimony of the following witnesses will be offered by written deposition:

1)    James R. Schimschock, M.D. (Plaintiff's Designations of Trial Testimony/Reading of James R. Schimschock, M.D. attached hereto.)

2)    Defendant, Clinton Memorial Hospital, will offer the entire transcript of James R. Schimschock, M.D. by written deposition and objects to Plaintiff's designation of partial pages and lines.  The entire deposition is 63 pages long.

3)    Defendant, Clinton Memorial Hospital, reserves the right to read into evidence any deposition of any witness identified by Plaintiff in the pretrial statement whom they do not ultimately call in the trial of their case.

H.    Discovery

Discovery has been completed.


I.    Pending Motions

There are no pending motions at this time.  Plaintiff anticipates filing motions in limine.

Defendant Merling anticipates filing motions in limine.

Defendant, Clinton Memorial Hospital anticipates filing motions in limine.

     J.    <u>Miscellaneous Orders</u>

         1)    Set forth any orders not properly includable elsewhere; OR

         2)    The foregoing stipulations and statements were amended at the final pretrial conference as follows:

V.    <u>Modification</u>

This Final Pretrial Statement may be modified at the trial of this action, or prior thereto, to prevent manifest injustice. Such modification may be made by application of counsel of on motion of the Court.

VI.    <u>Jury Instructions and Trial Briefs</u>

Civil Cases. Trial briefs shall be filed with the Clerk of Courts FIVE DAYS prior to the commencement of trial. See Item H, pp. 8 & 9 for deadline regarding Jury Instructions.

Defendant, Clinton Memorial Hospital anticipates filing jury instructions, jury interrogatories and trial briefs pursuant to the Court's scheduling order.

VII.    <u>Settlement Efforts</u>

The parties are engaged in a good faith effort to negotiate a settlement.

VIII.    <u>Additional Action Taken</u>

Date:  <u>October 13, 2004</u>

  /s/ Mark Hutton
Counsel for Plaintiff


  /s/ Gayle Arnold
Counsel for Defendant Fauley


  /s/ Brian Goldwasser
Counsel for Defendant Merling


  /s/ Dee Sheriff-MacDonald
Counsel for Defendant
Clinton Memorial Hospital


## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing has been sent to the following counsel via CMECF/electronic mail or regular US Mail on this 13TH day of October, 2004:

**Anne H. Pankratz, Esq.**          *via regular mail*
**Mark B. Hutton, Esq.**            *via regular mail*
**Anne M. Hull, Esq.**              *via regular mail*
**J. Darin Hayes, Esq.**            *via regular mail*
Attorneys for Plaintiffs
Hutton & Hutton
8100 East 22nd Street North
Building 1200
P.O. Box 638
Wichita, KS  67201-0638

**Stanley Chesley, Esq.**           *stanchesley@wsbclaw.cc*
**James Cummins, Esq.**             *jcummins@wsbclaw.cc*
**Renee Infanté, Esq.**             *ReneeInfante@wsbclaw.cc*
**Terrence Lee Goodman, Esq.**      *terrygoodman@wsbclaw.cc*
Attorney for Plaintiffs
Waite, Schneider, Bayless & Chesley
1513 Fourth & Vine Tower
Cincinnati, OH  45202

- 28 -

**Gayle E. Arnold, Esq.**        *via regular mail*
**Maryellen Spirito, Esq.**      *mspirito@arnoldlaw.com*
Attorney for Defendant Fauley
Arnold & Associates
2075 Marble Cliff Office Park
Columbus, OH   43215

**Brian Goldwasser, Esq.**      *bgoldwasser@reminger.com*
Attorney for Defendant Merling
Reminger & Reminger
Federated Building, Suite 1990
7 West Seventh Street, Cincinnati, OH  45202

/s/ Dee Sheriff-MacDonald
Dee Sheriff-MacDonald
Daniel J. Buckley